# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 05-cv-02039-REB-MJW

STEVEN SIGNER, a Colorado resident,

    Plaintiff,

v.

IRENE PIMKOVA, a California resident,
VIDIP, LLC, a Nevada limited liability company,

    Defendants and Third-Party Plaintiffs,

ANDREW TROJNER, a Canadian resident, and
JOHN DOES, 1-9,

    Defendants,

BATHGATE CAPITAL PARTNERS, LLC, a Colorado limited liability company,

    Third-Party Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

**Blackburn, J.**

    This matter came before me for trial to the court on December 3, 2007. Plaintiff, Steven Signer, appeared in person and by his attorney, Steve A. Miller. Defendant Andrew Trojner did not appear in person, but was represented by his attorney, Frederick D. Greco. Third-party defendant, Bathgate Capital Partner, LLC,[1] appeared

---

[1] Because the Federal Rules of Civil Procedure do not contemplate "counterclaim plaintiffs" and "counterclaim defendants," as originally designated in the caption of the case, I have redesignated defendants, Pimkova and VIDIP, as third-party plaintiffs and Bathgate Capital Partners as the third-party defendant.

by its attorney, Steven David Plissey. Defendant and third-party plaintiff, Irene Pimkova, did not appear in person or by counsel. Likewise, defendant and third-party plaintiff VIDIP, LLC, did not appear by counsel or otherwise.

There were three species of claims presented for trial: 1) plaintiff's claim for defamation against Trojner and Pimkova; 2) Pimkova's and VIDIP's counterclaims against plaintiff; and 3) Pimkova's and VIDIP's third-party claims against Bathgate. Exercising my discretion under Fed.R.Evid. 611(a)(1), I elected to proceed out of order and took up the counterclaims and third-party claims of Pimkova and VIDIP first. Because neither party appeared at trial, no evidence was presented in support of the counterclaims or third-party claims.

Both plaintiff and Bathgate made oral motions for judgment pursuant to Rules 41(b) and 52(c). I granted both motions. I found and concluded that plaintiff was entitled to judgment as to the counterclaims asserted against him by Pimkova and VIDIP, and that third-party defendant Bathgate was entitled to judgment as to all third-party claims asserted against it by Pimkova and VIDIP pursuant to Rule 52(c).[2] In addition, I found that both plaintiff and Bathgate were entitled to recover their costs against Pimkova and VIDIP. I then excused Bathgate from further participation in the trial.

The trial then proceeded as to plaintiff's lone claim for defamation against

---

[2] Alternatively, I find that plaintiff is entitled to dismissal of Pimkova's and VIDIP's counterclaims against him and that Bathgate is entitled to judgment as to all third-party claims asserted against it by Pimkova and VIDIP pursuant to Rule 41(c). *See* **FED.R.CIV.P**. 41(c) ("This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim.").

2

Trojner and Pimkova.[3] I received plaintiff's evidence, which consisted of his sworn testimony from the witness stand and three exhibits: a copy of the allegedly defamatory email (Trial Exhibit 27); copies of plaintiff's W-2 forms for 2004 through 2006 and a statement of damages allegedly caused by the defamation (Trial Exhibit 32); and excerpts of Trojner's deposition testimony in this matter (Trial Exhibit 34).

I waived mid-trial motions and proceeded immediately to Trojner's evidence. Trojner proffered designated portions of Trial Exhibit 34, his own deposition testimony in this matter, as his only evidence. Although not proffered pursuant to my civil practice standards,[4] I received his counter-designations, subject to plaintiff's objections.

Having judicially noticed all relevant adjudicative facts in the file and record of this case *pro tanto*; having considered the stipulations of the parties (**Amended Final Pretrial Order**, *Stipulations* ¶¶ 1-19 at 15-17, [#145], filed February 20, 2007.); having considered the admissible evidence educed in its various forms; having determined the credibility of the witnesses; having weighed the evidence; having considered the reasons stated, arguments advanced, and the authorities cited by the parties; and being otherwise sufficiently advised, I enter the following findings of fact that are established by a preponderance of the evidence, conclusions of law, and orders.[5]

---

[3] Counsel for plaintiff admitted in closing that he erred in including VIDIP within the scope of his defamation claim in his proposed findings of fact and conclusions of law, because that claim has never been asserted against VIDIP.

[4] *See* REB Civ Practice Standard III.F.1.a., requiring designation of deposition testimony 45 days before trial.

[5] Any finding of fact deemed more properly a conclusion of law, or any conclusion of law deemed more properly a finding of fact, shall be as characterized more properly.

## FINDINGS OF FACT:

1. This case concerns whether an email sent by Trojner, allegedly at the urging of Pimkova and others, to certain existing and potential clients of plaintiff was defamatory per se.

2. Plaintiff has been a licensed stockbroker for the past 25 years. At the time of the events underlying this lawsuit, he was a registered representative of Bathgate, a broker-dealer based in Greenwood Village, Colorado. (**Amended Final Pretrial Order**, *Stipulations* ¶ 10 at 16, [#145], filed February 20, 2007.) Plaintiff is a fiduciary with respect to those clients whose funds are entrusted to him for investment and management.

3. Plaintiff works principally with a limited number of very wealthy individuals and entities in a program that relies on leveraging certain types of government guaranteed securities. These are high-risk transactions, and the investment can be extremely volatile in the short-term, albeit potentially highly profitable in the long-term. Plaintiff ensures that every client understands the nature of the risk involved by having clients sign a written disclosure document acknowledging the risk of a substantial loss by investing in this program.

4. On June 13, 2005, Trojner sent an email to ten of plaintiff's existing customers and three potential customers, which stated, in relevant part:

> They [plaintiff and Bathgate] have run our accounts down
> and are trying to steal the money. They are planning to
> move to another auditing firm to avoid reporting the
> transactions that have occurred. . . .

>   I need a few things.
>
>   . . . .   3) I need you to contact the FBI and launch an investigation against Bathgate, Steve Signer, [and others].
>
>   . . . .
>
>   You may have some negative feelings towards William Elder and Dr. Pimkova. . . . However, they did not manipulate our funds, nor did they trade them down. That was Bathgate and Signer. . . .
>
>   Please respond to this and go to the FBI and police today.
>
>   Sincerely,
>   Andrew Trojner
>   Managing Director

(Trial Exh. 27.)

    5. According to Trojner the language for this email was provided to him by William Elder[6] and defendant Pimkova. (Trial Exh. 34 at 113-114.)

    6. In hindsight, Trojner felt that Elder and Pimkova had manipulated him into sending the email.

    7. Trojner drafted a second email later that same day admitting that he "made an error in judgment this morning when I asked you to speak to the authorities" and apologizing for "jumping the gun and getting over anxious." (Trial Exh. 34 at 115-116 & Trojner Depo. Exh. 12 at 2.)[7]

    8. Trojner acknowledged that plaintiff, in fact, never misled him about the

---

[6] Counsel for plaintiff represented to the court that although Elder was originally named as a defendant in this lawsuit, he was never located in order to effectuate service of process.

[7] There is no evidence, however, that this email was sent to anyone, as the "To:" and "CC:" fields on the document are blank. (*See* Trial Exh. 34, Trojner Depo. Exh. 12 at 2.)

investment. (Trial Exh. 34 at 83.)

9. Plaintiff knows that at least four of the ten existing customers to whom this email was sent received it because they called him to inquire about the content of the email soon thereafter.

10. Several customers called plaintiff a thief in their phone calls to him.

11. Several clients told plaintiff that Pimkova had called them to report nearly identical allegations prior to the date of Trojner's email.

12. Within days of June 13, 2005, the customers who received Trojner's email closed their accounts with plaintiff.

13. Within a matter of months, the remainder of the thirteen addressees of the email also either closed their accounts with plaintiff or did not invest with him.

14. Although plaintiff has had individual clients withdraw their investments with him from time to time, never before has he had a block of clients close their accounts *en masse* as occurred following dissemination of the June 13, 2005, email.

15. In 2004, plaintiff's annual income was $989,712.81. In 2005, he earned $500,334.92. His annual income was $400,104.06 in 2006. (Trial Exh. 32.)

16. I found plaintiff to be a credible witness. I further found Trojner's deposition testimony credible because he has inculpated himself with respect to plaintiff's defamation claim.

## CONCLUSIONS OF LAW

1. I have subject matter jurisdiction over plaintiff's claims against Trojner and Pimkova pursuant to 28 U.S.C. § 1332. All parties are citizens of different states and/or

countries and the amount in controversy exceeds $75,000 exclusive of costs and interest.

2. Both Trojner and Pimkova have waived any potential arguments they may have had as to this court's personal jurisdiction over them, both by failing to raise those arguments timely and by appearing and substantially participating in this action.  *See* **FED.R.CIV.P.** 12(h)(1).

3. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a)(2).

4. In assessing the credibility of plaintiff as a witnesses at trial and Trojner as a deponent, I have considered all facts and circumstances shown by the evidence that affect the credibility of these witnesses, including the following factors:  the witness's means of knowledge, his ability to observe, and his strength of memory; the manner in which the witness might be affected by the outcome of the litigation; the relationship the witness has to either side in the case; and the extent to which the witness is either supported or contradicted by the other witnesses or evidence presented at trial.  It is based on these considerations that I entered findings of fact about the credibility of plaintiff and Trojner.

5. Colorado law governs determination of plaintiff's claim for defamation in this diversity case.  ***Clark v. State Farm Mutual Automobile Insurance Co.,*** 433 F.3d 703, 709 (10th Cir. 2005).

6. Under Colorado law, "[d]efamation actions may lie for published or publicly spoken statements, in the forms of defamation by libel or defamation by slander,

respectively." ***Denver Publishing Co. v. Bueno***, 54 P.3d 893, 898 (Colo. 2002). A statement is defamatory if it is false and tends to so harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him. ***Burns v. McGraw-Hill Broadcasting Co.***, 659 P.2d 1351, 1357 (Colo. 1983).

7. To prove a claim for relief for defamation under Colorado law, plaintiff must prove by a preponderance of the evidence: "1) a written defamatory statement of and concerning the plaintiff; (2) published to a third party; (3) with the publisher's fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special damages or the existence of special damages caused by the publication." ***Stump v. Gates***, 777 F.Supp. 808, 825 (D. Colo. 1991), ***aff'd***, 986 F.2d 1429 (10th Cir. 1993).

8. A statement is defamatory per se if it accuses the subject, *inter alia*, of a crime or of engaging in conduct "incompatible with his business, trade, profession, or office." ***Denver Publishing Co.***, 54 P.3d at 899 n.9 (quoting **RESTATEMENT (SECOND) OF TORTS** § 570) (internal quotation marks omitted).

9. There is no question that the statements made by Trojner in the email were defamatory per se. His email accused plaintiff of "trying to steal the money." I agree with plaintiff that this statement is the lay equivalent of an accusation of theft or at least attempted theft. Under Colorado law, both theft and attempted theft are felonies. ***See*** §§18-4-401(2)(d) & 18-2-101(4), C.R.S. The email avers also that plaintiff has attempted to manipulate client funds, avoid reporting transactions, and other actions

8

incompatible with his status as a fiduciary with respect to his clients and their accounts. Such statements clearly assert conduct incompatible with plaintiff's profession.

10. "Publication of a defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." ***Card v. Blakeslee***, 937 P.2d 846, 850 (Colo. App.,1996) (citing **RESTATEMENT (SECOND) OF TORTS** § 577). This same rule applies to any republication of a defamatory statement. ***See Churchey v. Adolph Coors Co.***, 759 P.2d 1336, 1344 (Colo. 1988); ***see also*** CJI-Civ 4th 22:6, Notes On Use ¶ 2.

11. Plaintiff has proved by a preponderance of the evidence that four of his clients received Trojner's email. Therefore, publication by Trojner has been proven. Moreover, Trojner's deposition testimony supports the conclusion that Pimkova supplied the language of the email to Trojner under circumstances indicating that she had reason to believe Trojner would publish it to plaintiff's clients. Therefore, Pimkova is liable also for publication of the defamatory statements that she created.

12. Publication must be accompanied by fault on the part of the author. Plaintiff is not a public official or public figure, nor are the matters about which the email spoke of public concern. Therefore, he need not prove that Trojner and Pimkova acted with malice. Rather, he need only prove that defendants were negligent. ***See Quigley v. Rosenthal***, 327 F.3d 1044, 1058 & n.4 (10th Cir. 2003), ***cert. denied***, 124 S.CT. 1507 (2004); ***Williams v. District Court, Second Judicial District, City and County of Denver***, 866 P.2d 908, 912 n.4 (Colo. 1993).

13. The evidence adduced at trial establishes by a preponderance of the

9

evidence that Trojner was at least negligent in making the statements contained in the email.  Indeed, he admitted at his deposition that he did not actually believe plaintiff had misled him with respect to his investment.  It is clearly not objectively reasonable to publish statements that one knows or strongly suspects to be false.  **See Slack v. Farmers Insurance Exchange**, 5 P.3d 280, 285 (Colo. 2000) (defining negligence as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation") (quoting **Black's Law Dictionary** 1056 (7th ed. 1999)) (internal quotation marks omitted).

14.  Trojner argued he is entitled to a qualified common interest privilege.  Colorado recognizes a qualified privilege for communications by a party with a legitimate interest to persons having a corresponding interest and communications promoting legitimate individual, group, or public interests.  **Burke v. Greene**, 963 P.2d 1119, 1122 (Colo. App. 1998).  Where the privilege applies, a showing of malice on the part of the speaker is required to overcome it.  **See Sky Fun 1, Inc. v. Schuttloffel**, 8 P.3d 570, 574 (Colo. App. 2000), **aff'd in relevant part, rev'd on other grounds**, 27 P.3d 361 (Colo. 2001).

15.  Trojner is not entitled to rely on the common interest privilege for at least three reasons.  First, this affirmative defense was neither pled in his answer nor preserved in the Amended Final Pretrial Order.  Second, even if the matter were properly pled and preserved, Trojner presented no evidence to establish that the thirteen entities and individuals to whom the email was sent had anything in common other than the fact that they all invested money through plaintiff.  Third, even if Trojner

10

had presented evidence to support a finding of common interest privilege, the evidence nevertheless is insufficient to show a lack of malice on his part. Malice as used in the law of defamation "refers to a state of mind in which with knowledge that it was false or with reckless disregard of whether it was true or false," that is "that the defendant in fact entertained serious doubts as to the truth of the published statement." ***Lockett v. Garrett***, 1 P.3d 206, 210 (Colo. App. 1999). Trojner admitted in his deposition that he knew the statements in the email to be false. His eventual remorse at his hastiness in sending the email, therefore, would not negate a showing of malice.[8]

16. With respect to Pimkova, on the other hand, the evidence of record is insufficient to establish that she knew or believed the statements to be false or was otherwise negligent regarding their truth or falsity. During closing argument, counsel for plaintiff urged me to infer malice from the nature and tone of Pimkova's pleadings and papers in this lawsuit, which he argued indicate that she published the statements as a personal vendetta against plaintiff because he refused to pay her commissions. These pleadings and papers are not evidence *per se* in this case, and I refuse counsel's implicit invitation to transform a party's position in litigation into an affirmative, substantive finding regarding her mental state nearly two years ago. Therefore, plaintiff has failed sustain his burden of proof to show that Pimkova acted with the state of mind necessary to impose liability on her for defamation per se.

---

[8] Moreover, I reject Trojner's attempt to spin his second email (Trial Exh. 34, Trojner Depo. Exh. 12 at 2) as a "retraction" of his earlier accusations. The email only requested that the recipients abstain from contacting the authorities to initiate an investigation of plaintiff's activities pending Trojner's meeting with an attorney concerning these same matters. Tellingly, Trojner's second email did not claim that the original allegations of theft and other misdeeds were in error or otherwise negate or retract those libelous accusations.

11

17. Plaintiff is entitled to recover general damages from Trojner. "In an action by a private person plaintiff involving a statement which is not a matter of public interest or general concern, a claim for [defamation] per se does not require proof of damages; they are presumed." ***Pittman v. Larson Distributing Co.***, 724 P.2d 1379, 1387 (Colo. App. 1986) (citing ***Diversified Management, Inc. v. Denver Post, Inc.***, 653 P.2d 1103,1106 (Colo. 1982)).[9] "'General damages' are compensatory damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence need not be alleged in order to be proved." **RESTATEMENT (SECOND) OF TORTS** § 904(1). "In defamation actions general damages are imposed for the purpose of compensating the plaintiff for the harm that the publication has caused to his reputation." ***Id.*** § 621, Comment a.

18. In assessing general damages, the finder of fact is required to estimate the amount of injury. ***Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.***, 408 F.Supp. 1219, 1233 (D. Colo. 1976) (citing Prosser, ***The Law of Torts***, §§ 112- 113 (4th ed. 1971)), ***aff'd in relevant part, remanded on other grounds***, 561 F.2d 1365 (10th Cir. 1977), ***cert. dismissed***, 98 S.Ct. 905 (1978).

19. Plaintiff offered Trial Exhibit 32 in support of his request for damages. This document consists of copies of plaintiff's W-2 forms from 2004, 2005, and 2006, and a

---

[9] Colorado continues to follow this rule, ***see People v. Ryan*** 806 P.2d 935, 939 (Colo.), ***cert. denied***, 112 S.Ct. 177 (1991), despite the Supreme Court's pronouncement in ***Gertz v. Robert Welch, Inc.***, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), that "the State may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard of the truth. . . . [T]he private defamation plaintiff who establishes liability under a less demanding standard than that stated by ***New York Times*** [***Co. v. Sullivan***, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] may recover only such damages as are sufficient to compensate him for an actual injury." ***Id.***, 94 S.Ct. at 3011-12.

summary page. These documents reflect that plaintiff earned $989,712.81 in 2004. By contrast, in 2005, he received $500,334.92 in income. This represents a loss of $489,377.89 from the year previous. In 2006, plaintiff earned $400,104.06, a loss of $589.608.75 from his 2004 income.

20. The summary page of Trial Exhibit 32 suggests that plaintiff earned no income in 2007, and, that, therefore, his damages for the year are equal to $989,712.81, that is, the full amount of his 2004 income.

21. Because I use the above figures to estimate general, as opposed to special, damages, I find plaintiff's figures as to his losses in 2005 and 2006 to be a reasonable estimate of the damage to his reputation as a result of Trojner's defamation per se.

22. However, I do not find plaintiff's calculation to be a reasonable estimate of his losses for 2007. Of course, because 2007 has not yet ended, plaintiff has not submitted a W2 showing his income for the year. Nevertheless, nothing in the evidence supports the conclusion that plaintiff earned absolutely no income in 2007. Indeed, his testimony implicitly suggested that he continues to work as a stockbroker. Had his career truly been rendered as null as Trial Exhibit 32 suggests, I would have expected plaintiff to testify to such a devastating consequence. The fact that he did not, coupled with the sole reliance on W-2s to prove the amount of damages, leads me to conclude that Trial Exhibit 32 does not represent a reasonable estimate of plaintiff's damages for 2007.

23. Thus, I find and conclude that plaintiff is entitled to general damages from Trojner in the amount of $1,078,987.

24. Trial Exhibit 32 represents also that plaintiff has incurred $750,000 in legal fees and costs in pursuing this matter to trial. Of course, plaintiff is entitled pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1 to his costs as the prevailing party in this action. However, I find no authority, and plaintiff has cited none, which would allow him to recover attorney's fees in this type of action.

25. In general, Colorado follows the "American rule," which provides that "[i]n the absence of a statute or contractual agreement, attorney fees are not ordinarily recoverable as an element of damages in a tort . . . action." **See Double Oak Construction, L.L.C. v. Cornerstone Development International, L.L.C.**, 97 P.3d 140, 150 (Colo. App. 2003).

26. Colorado does allow the recovery of attorney's fees as general damages where the incursion of such fees naturally flows from the commission of the tort involved. **See, e.g., Bainbridge, Inc. v. Travelers Casualty Co. of Connecticut**, 159 P.3d 748, 756 (Colo. App. 2006) (cause of action for breach of insurer's duty to defend includes as general damages attorney's fees incurred by insured in defending itself against the claims asserted); **Bedard v. Martin**, 100 P.3d 584, 589-90 (Colo. App. 2004) (attorney's fees incurred in defending title against the true owner represent proper measure of damages for claim of breach of warranty of title because such are "necessarily sustained in protecting [the] title").

27. However, I have found no Colorado case holding or suggesting that attorney's fees incurred to rectify the publication of a defamatory statement, per se or otherwise, are properly considered part of general damages. Nor does logic dictate

that they should be.  The filing of this lawsuit is not part and parcel of the reputational injury plaintiff suffered as a result of the publication of the June 13, 2005, email.  Plaintiff's interest in vindicating his rights is no different from that of any other plaintiff who files a lawsuit.  Were it otherwise, the exception would certainly swallow the American rule.  I find nothing in Colorado law that would support such a result.

28. Moreover, although the availability of general damages in a defamation per se action does not preclude a plaintiff from also recovering special damages, *see* **RESTATEMENT (SECOND) OF TORTS** § 622, plaintiff has failed to present any evidence to support the figure that supposedly represents his attorney's fees and costs.  Thus, assuming *arguendo* that attorney's fees are recoverable as special damages in this context, plaintiff has not proven his entitlement to recovery of such damages.  I, thus, conclude that plaintiff is not entitled to recovery his attorney's fees from Trojner as special damages.

29. The dismissal of Pimkova and VIDIP's counterclaims negates the basis for plaintiff's designation of Peter W. Bachmann as a nonparty at fault.  (*See* **Unopposed Motion To Designate Nonparty At Fault** at 2, ¶ 3 [#47], filed April 4, 2006 (suggesting plaintiff's belief that Bachmann should be designated as a nonparty at fault pursuant to §13-21-111.5, C.R.S., because his conduct may have been "a contributing or primary factor to any damages suffered by Pimkova and VIDIP" as alleged in their counterclaims)).

30. To the extent any claim remains against the John Doe defendants, it should be dismissed.  Plaintiff has never identified any of the John Doe defendants, and his

15

sole claim for relief was directed to Trojner and Pimkova alone. Nor did he present any evidence at trial that anyone, identified or not, other than these two defendants was responsible for publication of the defamatory email. The claims against the John Doe defendants, therefore, must be dismissed.

31. This order and my **Order of Dismissal as to Defendant William Elder** [#81], entered June 30, 2006, resolve finally all issues of fact and law raised by or inherent to all claims for relief averred in plaintiff's **Verified Complaint** [#2], filed October 14, 2005.

**THEREFORE, IT IS ORDERED** as follows:

1. That judgment **SHALL ENTER** for plaintiff, Steven Signer, against defendant, Andrew Trojner, as to plaintiff's First Claim for Relief (Defamation);

2. That plaintiff, Steven Signer, is **AWARDED** damages in the principal amount of $1,078,987 against defendant, Andrew Trojner, as a result of the defamation per se;

3. That pursuant to 28 U.S.C. § 196,1 plaintiff, Steven Signer, is **AWARDED** post-judgment interest against defendant, Andrew Trojner, on the principal amount of the judgment from the date of this order until the judgment is fully paid;

4. That plaintiff, Steven Signer, is **AWARDED** his costs against defendant, Andrew Trojner, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d) and D.C.COLO.LCivR 54.1;

5. That judgment **SHALL ENTER** for defendant, Irene Pimkova, against plaintiff, Steven Signer, as to plaintiff's First Claim for Relief (Defamation), and that claim is **DISMISSED WITH PREJUDICE** as to defendant, Irene Pimkova;

6. That judgment **SHALL ENTER** for plaintiff, Steven Signer, against defendants, Irene Pimkova and VIDIP, LLC, as to all counterclaims asserted against Signer by Pimkova and VIDIP, and those counterclaims are **DISMISSED WITH PREJUDICE**;

7. That judgment **SHALL ENTER** for third-party defendant, Bathgate Capital Partners, LLC, against the third-party plaintiffs, Irene Pimkova and VIDIP, LLC, as to all third-party claims asserted against Bathgate by Pimkova and VIDIP, and those third-party claims are **DISMISSED WITH PREJUDICE**;

8. That Bathgate Capital Partners, LLC, is **AWARDED** its costs against third-party plaintiffs, Irene Pimkova and VIDIP, LLC, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d) and D.C.COLO.LCivR 54.1;

9. That judgment **SHALL ENTER** pursuant to the orders in my **Order of Dismissal as to Defendant William Elder** [#81], entered June 30, 2006; and

10. That plaintiff's claims against the Doe defendants are **DISMISSED WITH PREJUDICE**.

Dated December 14, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**